In the Matter of the Arbitration between KILGORE MANUFACTUR-
ING COMPANY, Respondent, and NEW HAMPSHIRE FIRE INSUR-
ANCE Co., Appellant.

First Department, June 18, 1952.

*John M. Aherne* of counsel (*Howard W. Westphal* with him on the brief; *Bigham, Englar, Jones & Houston,* attorneys), for appellant.

*Samuel J. Silverman* of counsel (*Edward N. Costikyan* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for respondent.

HEFFERNAN, J.  On September 30, 1949, the respondent, a manufacturer of munitions and explosives, entered into a contract with the Government of Pakistan for the manufacture and sale to the latter of a quantity of military explosives. including a large number of antitank and antipersonnel mines.  The contract called for a certain type of United States Army antitank mines known as " M1A1 ".  As to those mines, respondent made the following express warranty that: " (a)  The annexed drawings and specifications covering Item I, Anti-Tank Mine, are in every respect identical to the following United States Army drawings and specifications for Anti-Tank Mine M1A1; and said annexed drawings and specifications include all official modifications, improvements, or changes of any kind in or of said Anti-Tank Mine M1A1 as last issued for use by the United States Army: —

$$82 - 15 - 1$$
$$82 - 15 - 2$$
$$82 - 15 - 3 \text{ ".}$$

The contract also contained the highly pertinent provision that all items were to be packed suitably for export to Pakistan. This contract contained the following arbitration clause: " ARBITRATION:  All questions and controversies arising in connection with this contract shall be submitted to arbitration in New York, N. Y., in accordance with the rules of  *  *  * arbitration of the American Arbitration Association."

The contract specifically provided that its construction and performance should be governed by the laws of the State of New York.

When these mines were manufactured, assembled and packed they were placed in transit.  A shipment consisting of 8,000 cases of antitank mines and 1,000 cases of antipersonnel mines exploded on May 19, 1950, at South Amboy, New Jersey, thereby not only destroying the mines but also causing a great loss of life.

The United States Coast Guard conducted an investigation of the cause of the explosion and found that the most probable

cause was the accidental detonation of the antitank mines due to defective manufacture, assembly and packing of the same.

The antitank mines which respondent manufactured and shipped were not M1A1 mines. On the contrary, they were similar to an older mine known as M1 which had been discontinued by the Army in 1942 because of its tendency to accidental detonation. The contract was f. o. b. respondent's plant at Westerville, Ohio. Pakistan paid for them without knowledge that they were not as called for by the contract. The Coast Guard made findings that the mines were poorly assembled, loosely packed and packed in violation of applicable regulations.

The appellant which had insured the mines paid the Government of Pakistan $327,376.86 for the loss of the mines. The Government of Pakistan assigned its claim under the contract to appellant. The subrogation receipt specifically assigns to appellant " all such rights, claims, demands and causes of action, including all rights, claims, demands and causes of action on account of the destruction of the said property, on, under or by virtue of any contract or contracts." Thereafter, appellant made claim upon respondent asserting that respondent had violated the contract and specifications contained therein. This claim was rejected and appellant then made a written demand for arbitration because of your (respondent) " disregard and violation of the terms, warranties and representations of the said contract; your failure to manufacture the mines in accord with the drawings and specifications; your violation of your contract warranty that the drawings and specifications were identical with certain numbered U. S. Army drawings and specifications and that they included all official modifications, improvements and changes as last issued by the U. S. Army ".

Respondent moved before a Special Term of the Supreme Court to stay arbitration and from an order granting its motion the appellant has come to this court.

Appellant's claim is grounded solely on the breach of a written contract. It does not sound in tort. The claim sought to be arbitrated is based upon a breach of warranty. It has no connection whatever with the South Amboy disaster as such. The assertion of a breach of warranty involves a dispute stemming from violation of contract and consequently does not sound in tort. It is clear, therefore, that the dispute between the parties comes within the provisions of the contract requiring arbitration of all questions and controversies arising in connection

with the contract. The arbitration should be confined to damages resulting from any breach of warranty as distinguished from matters not related to the contract.

Obviously, the parties never contemplated the explosion which occurred at South Amboy when their contract was made. That is not the point here. The only question here is whether respondent breached its existing contract with the Pakistan Government. To say that such a disagreement is not a question or a controversy " arising in connection with [the] contract " is to deny to those words their plain and ordinary meaning. That is precisely the question which the parties agreed to submit to arbitration.

In his memorandum, the learned Justice at Special Term stated that the issues sought to be referred to arbitration " sounds in tort ". That statement, of course, is true as to third parties who suffered damage in the South Amboy explosion but as between respondent and the Government of Pakistan the mines themselves were the subject matter of the contract. It was only as between these two parties that the mines had to be of a certain type. It was only as between them that the contract specifications had to be complied with. It was only as between them that respondent warranted the specifications to be the latest type of United States Army M1A1 mines with all current improvements.

The claim here is for the value of mines which exploded because they did not conform to the contract specifications. It is not for causing the South Amboy explosion. That unfortunate disaster has nothing to do with the questions whether respondent breached its contract and whether that breach is an arbitrable controversy under the arbitration clause.

It may very well be that negligence and carelessness have a part in this case but, if so, they have only a bearing on whether or not there was a breach of the terms of the contract. As already stated, the arbitration which we direct should be limited to claimed breaches of the contract. The appellant should not be permitted to turn the arbitration into a negligence litigation. Appellant is only entitled to one forum in which to try out its claim. In other words, it must elect between arbitrating a breach of contract or suing at law for negligence. It should not be able to do both and assert some claim in negligence in a court of law for the same relief if it fails to recover on the breach of contract theory on the arbitration.

The point is made in the brief of respondent that the appellant is only a partial assignee of the Pakistan Government. There is no question here of partial assignment. The supplemental

agreement between the Government of Pakistan and respondent expressly reserved all claims arising out of the explosion of the mines at South Amboy. Apparently, the Pakistan Government and respondent have adjusted their claims so all that is left in this case is the claim of the appellant.

Respondent's assertion of the inadequacy of the demand for arbitration is without merit. Appellant made it very clear to respondent what controversies were to be arbitrated. The demand for arbitration and appellant's earlier letter on the same subject to respondent clearly and precisely defined the issues to be settled by the arbitration demanded. However, if respondent desires a bill of particulars or a clarification it has an available remedy to obtain that relief.

The order appealed from should be reversed, with $20 costs and disbursements, and the motion to stay arbitration should be denied.

PECK, P. J., CALLAHAN, VAN VOORHIS and BERGAN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to appellant, and the motion to stay arbitration denied. Settle order on notice.